UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case Nos. 1:17-cr-190-TWP-TAB-01 and 1:18-cr-145-TWP-DML-1 |
| v. | ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| VICTOR BOYD | (COMPASSIONATE RELEASE) |

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:17-cr-00190-TWP-TAB-01 |
| VICTOR BOYD, | ) ) ) | Case No. 1:18-cr-00145-TWP-DML-01 |
| Defendant. | ) | |

**ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE**

This matter is before the Court on Defendant Victor Boyd's ("Mr. Boyd") Supplement in Support of Compassionate Release, filed in Case No. 1:17-cr-00190-TWP-TAB (Dkt. 224) and in Case No. 1:18-cr-145-TWP-DML, (Dkt. 48). For the reasons explained below, the Motions must be **denied**.

## I.   PROCEDURAL HISTORY

In the above-captioned cases, Mr. Boyd filed identical *pro se* motions seeking release from custody because of COVID-19, that the Court construed as Motions for Compassionate Release under Section 603 of the First Step Act of 2018. Because the motions are identical and the relief Mr. Boyd seeks in the two cases is the same, the Court has considered the two cases together.[1]

The Court appointed counsel to represent Mr. Boyd and stayed the cases. Counsel appeared, but later moved to withdraw and the Court granted those motions. On August 21, 2020, the Court issued an Order lifting the stay and informed Mr. Boyd that he must pursue his motions *pro se*. (Dkt. 222.) The Order explained that his present motions lacked sufficient information for the Court to determine whether he was entitled to compassionate release. *Id*. The Court ordered

---

[1] Mr. Boyd also has a pending motion for relief that relies on a different section of the First Step Act. (*See* Dkt. 198 in Case No. 1:17-cr-190-1.) The Court will resolve that motion separately.

Mr. Boyd to supplement his motions by completing and filing the Court's form compassionate release motion by October 2, 2020. *Id*. The Court warned Mr. Boyd that, if the form was not returned as directed, his motions for compassionate release would be considered abandoned and denied without prejudice and instructed the Clerk to mail Mr. Boyd a copy of its form compassionate release motion. *Id*. As of October 2, 2020, Mr. Boyd had not returned the required supplement. Accordingly, the Court denied Mr. Boyd's motions without prejudice on October 6, 2020. (Dkt. 223.)

On October 5, 2020, the Clerk received a supplement from Mr. Boyd, albeit not on the form compassionate release motion, as required by the Court's August 21, 2020 Order. (*See* Dkt. 224.) The Supplement was not, however, docketed until after the Court issued its October 6, 2020 Order. The Court will consider the Supplement at Dkt. 224 as a new motion for compassionate release in each of the above-captioned cases.[2] Because Mr. Boyd has not shown extraordinary and compelling reasons warranting a sentence reduction, his motions for compassionate release are **denied**.

## II.     DISCUSSION

Mr. Boyd entered a plea of guilty to Conspiracy to Distribute Controlled Substances in Case No. 1:17-cr-00190, and Conspiracy to Launder Money in Case No. Case No. 1:18-cr-00145. On August 30, 2018, the Court sentenced Mr. Boyd to 151 months' imprisonment in both of the cases, with the sentences to run concurrently. The Court also imposed five years of supervised release in Case No. 1:17-cr-00190 and three years of supervised release in Case No. 1:18-cr-00145, also to run concurrently. (Dkt. 162 at 2.) Judgment was entered on September 11, 2018.

---

[2] The Court concludes that it does not require a response brief from the Government to decide the issues presented by the supplemental motion.

Mr. Boyd is 34 years old. He is presently incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). As of October 13, 2020, the Bureau of Prisons ("BOP") reports that 7 inmates at FMC Lexington have active cases of COVID-19; it also reports that 9 inmates have died of COVID-19 and that 207 have recovered from the virus. The BOP website lists Mr. Boyd's release date as May 4, 2028.

In his current motions, Mr. Boyd seeks immediate release because he contracted COVID-19 while incarcerated at FMC Lexington. He has attached medical records showing that he tested positive for COVID-19 on May 11, 2020. (Dkt. 224-1 at 4.)[3] The records show that he was asymptomatic at the time his test was ordered. *Id.* at 3. They further show that medical personnel ordered that he receive temperature and oxygen checks two times per day and that Mr. Boyd remained asymptomatic through May 16, 2020. *Id.* at 9, 10, 11. The records do not show that he ever developed symptoms in connection with his COVID-19 infection. And, indeed, Mr. Boyd admits that he never developed symptoms of COVID-19, (*see, e.g.*, Dkt. 224 at 4 ("Petitioner is already suffering adverse effects [from contracting COVID-19], even if he has yet to develop symptoms . . . .")). Instead, he worries that he may be infected with COVID-19 again. (*See, e.g.*, Dkt. 224 at 13.)

Mr. Boyd also worries that he might have kidney damage, noting that many people who have been hospitalized with COVID-19 have suffered kidney damage. *Id.* at 12. He attaches records showing that he was diagnosed with acute kidney injury after an emergency room visit in 2017. (Dkt. 224-1 at 18-19.) He asserts that the BOP did not take any steps to further diagnose or treat his kidney issues before he was infected with COVID-19. (Dkt. 224 at 16–20.) He also

---

[3] Mr. Boyd filed the same documents in both cases. Citations in this section are to the docket in Case No. 1:17-cr-190-TWP-TAB-01.

4

asserts that the BOP has not taken any steps to determine whether he has suffered kidney damage (or other negative effects) after contracting COVID-19. *Id.*

Finally, Mr. Boyd offers many general complaints about the way officials at FMC Lexington have handled the COVID-19 pandemic. He states that officials have not followed protocols, have not followed guidance from the Centers for Disease Control and Prevention ("CDC"), and have not provided adequate care for sick inmates. (*See generally* Dkt. 224.) He asserts that FMC Lexington cannot properly treat, care for, diagnose, or house inmates during the pandemic. *Id.*

    18 U.S.C. § 3582(c) provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,[4] whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* In response to this directive, the Sentencing Commission promulgated a policy statement regarding

---

[4]The Government concedes that Mr. Boyd has exhausted his administrative remedies. (*See* Dkt. 45 in Case No. 1:18-cr-145-TWP-DML-01.)

compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[5] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Mr. Boyd is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years

---

[5] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies. *See* 132 Stat. at 5239 (First Step Act § 603(b)).

old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[6] *Id.*, Application Note 1(D).

Mr. Boyd does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him.[7] Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Court concludes that it does not. The Court understands Mr. Boyd to be arguing that he is at risk of developing severe symptoms from COVID-19. But the record does not support that claim. While the CDC has advised that chronic kidney disease of any stage increases a person's

---

[6]The policy statement provides that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons." U.S.S.G. Manual §1B1.13, Application Note 4. Likewise, the catchall provision provides, "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This policy statement has not been amended since the passage of the First Step Act. Insofar as it states that only the Director of the BOP can bring a motion under § 3582(c)(1)(A), it is directly contradicted by the amended statutory text. This discrepancy has led some courts to conclude that the Commission does not have a policy position applicable to motions under § 3582(c)(1)(A)(i) and that they have discretion to determine what constitutes an "extraordinary and compelling reason" on a case-by-case basis, looking to the policy statement as helpful, but not dispositive. *See, e.g.*, *United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (collecting cases); *see also United States v. Haynes*, No. 93 CF 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020) (collecting cases). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Mr. Boyd's motions are due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

[7]Mr. Boyd does state, in conclusory fashion, that "conditions created by his COVID-19 diagnosis and his exposure to others with the virus make it substantially harder for him to provide self-care within the prison environment." (Dkt. 224 at 4.) There is, however, no evidence, or even suggestion, that Mr. Boyd's medical conditions substantially diminish his capacity for self-care. Thus, Mr. Boyd has not shown an "extraordinary and compelling reason" warranting a sentence reduction under Subsection (A).

chances of developing severe COVID-19 symptoms, *see* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#copd (last visited Oct. 13, 2020), there is no evidence that Mr. Boyd has chronic kidney disease. Instead, the record shows only that he was diagnosed with acute kidney injury in 2017. Regardless, Mr. Boyd contracted COVID-19 more than 5 months ago. He does not appear to have been hospitalized—or even to have developed any symptoms at all. His concerns that he has suffered kidney damage (or any other negative effects from COVID-19) are speculative.[8] Thus, he has not shown extraordinary and compelling reasons warranting a sentence reduction. *See, e.g.*, *United States v. Weatherspoon*, No. 2:11-cr-9-JMS-CMM-07, Dkt. 894 (S.D. Ind. July 7, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had been hospitalized after testing positive for COVID-19, but had since recovered); *United States v. Wyatt*, No. 3:17-cr-11-RLY-MPB-02, dkt. 165 (S.D. Ind. Sept. 3, 2020) (finding no extraordinary and compelling reason where defendant had conditions putting him at risk for severe COVID-19 symptoms and had tested positive for COVID-19 but remained asymptomatic).

Mr. Boyd's concern about being re-infected with COVID-19 does not change this result. The Court acknowledges that FMC Lexington had a large outbreak of COVID-19, but the BOP currently reports that there are seven active inmate cases and one active staff case. That is, the outbreak currently appears to be largely under control within the inmate population. Regardless, Mr. Boyd's argument that he could experience severe symptoms if infected again is

---

[8]The Court acknowledges that Mr. Boyd has provided statistics suggesting that many people who have been hospitalized with COVID-19 have suffered kidney damage. (*See* Dkt. 224 at 12 in Case No. 1:17-cr-190-TWP-TAB-01.) Mr. Boyd's case of COVID-19 was not, however, so severe as to require hospitalization. Thus, those statistics do not support his position that he may have suffered kidney damage. The Court also notes that Mr. Boyd does not claim to be suffering from any symptoms that would suggest that his kidneys have been damaged.

speculative. *See* https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited Oct. 13, 2020) ("At this time, we have limited information about reinfections with the virus that causes COVID-19."). To date, this Court has declined to find extraordinary and compelling circumstances warranting a sentence reduction when a defendant has had an asymptomatic case of COVID-19—even when that defendant has risk factors for severe symptoms. *See*, *e.g.*, *Wyatt*, No. 3:17-cr-11-RLY-MPB-02, Dkt. 165 (S.D. Ind. Sept. 3, 2020); *United States v. Gevirtz*, No. 1:17-cr-68-RLY-MJD-01, Dkt. 68 (S.D. Ind. Sept. 14, 2020); *United States v. Young*, No. 1:10-cr-3-SEB-DML-17, Dkt. 1540 (S.D. Ind. July 27, 2020).

Mr. Boyd's complaints about the medical treatment he has received (or not received) at FMC Lexington also do not change this result. His complaints are well-taken. Such complaints suggest that he may wish to consider filing in his district of incarceration an action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), or a claim for injunctive relief. Given the availability of alternative relief, such complaints do not constitute an extraordinary and compelling reason warranting a sentence reduction. Similarly, Mr. Boyd's complaints about FMC Lexington's handling of the COVID-19 pandemic might conceivably support a claim for monetary damages, but they do not warrant releasing him from his sentence eight years early.

In short, Mr. Boyd has not shown an extraordinary and compelling reason warranting a sentence reduction. As a result, the Court need not decide whether Defendant presents a danger to the community or whether the sentencing factors in § 3553 favor release.

To the extent Mr. Boyd relies on the CARES Act as a basis for relief, (*see, e.g.*, Dkt. 224 at 5), the Court notes that the CARES Act expands the powers of the Attorney General and the Director of the Bureau of Prisons to release federal inmates to home confinement, but it does not give this Court any authority to release Mr. Boyd from incarceration. *See* Pub. L. No. 116-136,

134 Stat. 281, 516 (2020) (CARES Act § 12003(b)(2)) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of [18 U.S.C. § 3624(c)(2)], as the Director deems appropriate.").

### III.   CONCLUSION

For the reasons stated above, Mr. Boyd's motions for compassionate release, Dkt. [224] in Case No. 1:17-cr-190-TWP-TAB-01; and Dkt. [48] in Case No. 1:18-cr-145-TWP-DML-01, are **DENIED**. The **Clerk** is **directed** to enclose a prisoner civil rights complaint form with Mr. Boyd's copy of this Order.

**SO ORDERED.**

Date:  10/16/2020

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Victor Boyd, Reg. No. 15902-028
Federal Medical Center
P.O. Box 14500
Lexington, Kentucky 40512

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE
jeffrey.preston@usdoj.gov

M. Kendra Klump
UNITED STATES ATTORNEY'S OFFICE
kendra.klump@usdoj.gov